IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

BETTY G. MILLER,  )
  )
    Plaintiff,  )
  )
v.  )   CIVIL ACTION NO.: CV513-057
  )
  )
CAROLYN W. COLVIN, Acting  )
Commissioner of Social Security,  )
  )
    Defendant.  )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge G. William Davenport ("the ALJ") denying her claim for a period of disability and disability insurance benefits. Plaintiff urges the Court to reverse the ALJ's decision and award benefits or remand to the AJL to make findings incorporating all of her impairments in combination and afford proper weight to all opinion evidence of record including that of her treating and examining physicians. Defendant asserts the Commissioner's decision should be affirmed.

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on January 11, 2009, alleged that she became disabled on November 10, 2008, due to depression, anxiety, carpal tunnel syndrome and other physical and mental impairments. (Doc. 1, p. 2). The claims were initially denied on July 6, 2009, and upon reconsideration on July 20, 2010. (Doc. 9-2, p. 40). Plaintiff filed a written

AO 72A
(Rev. 8/82)

request for a hearing, which was held on May 19, 2011, at which Plaintiff's husband testified on her behalf. Id. at 93. A supplemental hearing was held on January 11, 2012. Id. at 7, 40. The ALJ's January 31, 2012, decision found that Plaintiff was not disabled within the meaning of the Social Security Act. Id. at 50. The Appeals Council denied review on April 19, 2013, and the decision of the ALJ became the final decision of the Commissioner for judicial review. Id. at 2.

Plaintiff, born on October 27, 1967, was forty-four (44) years old when the ALJ issued his final decision. She is a high school graduate and has an associate's degree in business. Id. at 10. Plaintiff's past relevant work experience includes being an administrative clerk, program associate, retail manager, and door-to-door sales. Id. at 10-14, 49; Doc. 21, p. 3.

## ALJ'S FINDINGS

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520 and 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Id. at 140-41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to

AO 72A
(Rev. 8/82)

preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work. Id. If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to make adjustments to other work in the national economy, considering her age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of November 10, 2008, through the date of his decision. (Doc. 9-2, p. 42). At step two, the ALJ determined that Plaintiff had depression, anxiety, and carpal tunnel syndrome. Id. These impairments are considered "severe" under the Regulations. However, the ALJ determined that Plaintiff's medically determinable impairments did not meet or medically equal the severity of a listed impairment. Id. at 43. The ALJ found that Plaintiff had the residual functional capacity, through the date last insured, to perform medium to heavy work with the following limitations: lifting no more than 65 pounds; only occasional climbing of ladders and scaffolds; and no working at unprotected heights. Id. at 44. The ALJ found that: Plaintiff could frequently reach (including overhead), handle, finger, and is capable of frequent fine and gross

AO 72A
(Rev. 8/82)

manipulation with her right hand; her left arm/hand is without limitation in its use; she is capable of driving and operating machinery on a frequent basis; she is best suited for simple or lower end detailed work, of a repetitive and less stressful nature, which does not require more than casual or infrequent interpersonal interactions; and she is limited due to experiencing some mild to moderate pain. Id. at 44-45. At the next step, the ALJ determined that Plaintiff was unable to perform any past relevant work as an administrative clerk and retail manager. Id. at 49. However, at the fifth and final step, the ALJ determined that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs which exist in significant numbers in the national economy that she can perform. Id. at 49.

## ISSUE PRESENTED

Plaintiff contends that the ALJ erred by: (1) affording little weight to the opinions of John Michaels, Jr., M.D. ("Dr. Michaels"), who was Plaintiff's treating psychiatrist; and (2) improperly relying upon a consultative's opinion of her IQ testing despite the fact that she alleges disability due to depression and anxiety; and (3) not properly considering her mental impairments and all opinion evidence of record including her counselor's notes and the opinions of Brenda Hollis, Dr. Blasko, and Dr. Cabeca.

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh

AO 72A
(Rev. 8/82)

the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F.2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

## DISCUSSION AND CITATION TO AUTHORITY

I. **Plaintiff's assertion that the ALJ erred by affording little weight to the opinions of Plaintiff's treating psychiatrist's opinion.**

Plaintiff claims that her mental impairments limit her so that she cannot maintain full-time employment. Plaintiff asserts that the ALJ erred by not assigning the appropriate weight to the opinions of Dr. Michaels, a physician who treated Plaintiff since 2007. Plaintiff states that in 2009, Dr. Michaels concluded that Plaintiff had major depression manifested by melancholic depressed mood, poor concentration, easy distractibility, low energy, demoralized outlook, tearfulness, emotionally labile, fatigue, abnormal affect, mood, appearance, behavior, thought processes, content of thought, memory, insight, judgment, ability to understand and remember and carry out simple

5

instructions. (Doc. 21, pp. 3-4; Doc. 12, pp. 48-49). It was Dr. Michael's opinion that Plaintiff had mild improvements in mood and activities of daily living, which were followed by more severe setbacks manifested by deepening melancholic mood, social withdrawal, inner absorption with tears, inner anger, and tensions, and that such were barriers to engaging in usual and customary activities. (Doc. 21, p. 4; Doc. 13, p. 32). Dr. Michaels opined that Plaintiff's overall progress was unsustained and meager. (Doc. 13, p. 32).

Plaintiff states that the ALJ afforded relatively little weight to Dr. Michael's 2009 opinion and that the ALJ's reasoning for doing so, "does not amount to good cause[.]" (Doc. 21, p. 9). She argues that the 2009 questionnaire contains more than a conclusory opinion. Id. Plaintiff claims that the ALJ only considered portions of Dr. Michael's treatment notes and compared non-mental health specialists' examinations to Dr. Michael's and used such as evidence to reject his opinion. Id. at 8.

In addition, Plaintiff asserts that the ALJ's failure to cite Dr. Michael's February 2011 opinion is legal error and contrary to the treating physician rule. Id. at 9. Plaintiff states that the ALJ failed to cite substantial evidence supporting the decision to reject Dr. Michael's opinion and that all of her medical providers or treating physicians provided consistent statements regarding her limitations and the severity of her condition and have diagnosed her with severe depression. Id. at 9-10.

The ALJ explained,

> Dr. Michael's conclusory statement, in the Mental Impairment Questionnaire, [is] not based on clinical or objective evidence but largely on the claimant's own complaints and account of her symptoms and limitations[.] Because of this lack of supportive evidence, and because the format is heavily weighted by the claimant's subjective complaints, the undersigned gives Dr. Michael's opinion relatively little weight. Recall

> here also the rule against conclusory medical opinions [ ] and understand, please – the undersigned CANNOT honor such an opinion, even if it were totally supported, and here, it is not.

(Doc. 9-2, p. 48). The ALJ based his limitations upon the assessments by Marc W. Eaton, Ph.D., ("Dr. Eaton") and Langston B. Cleveland, M.D. ("Dr. Cleveland"), because these assessments were based on "in-person" exams, "complete with specific facts" upon which the conclusions were based and were "largely consistent with the record as a whole." Id. at 49.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178-79 (11th Cir. 2011) (alteration in original) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citations omitted).

"Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" Winschel, 631 F.3d at 1179 (quoting Phillips, 357 F.3d at 1241). "The ALJ has wide latitude to determine what weight to assign to those opinions, so long as he operates within the regulatory and judicial frameworks." Zanders v. Colvin, No. CV412-182, 2013 WL 4077456, at *5 (S.D. Ga. Aug. 12, 2013). "For instance, when discounting a

medical opinion, he should consider several factors, including the examining relationship, the treatment relationship, the doctor's specialization, whether the opinion is amply supported, and whether the opinion is consistent with the record." Id. (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." Winschel, 631 F.3d at 1179 (citation omitted). Failure to "clearly articulate the reasons for giving less weight to the opinion of a treating physician" is "reversible error." Lewis, 125 F.3d at 1440 (citation omitted).

Dr. Michael's opinion was not bolstered by the evidence. Plaintiff's statements describing her symptoms did not assist in bolstering Dr. Michael's opinion because the ALJ determined that her statements were not credible. "In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citation omitted). "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." Id. (citation omitted). "After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citation omitted). "If the ALJ refused to credit subjective pain testimony where such testimony is critical, he must articulate specific reasons for questioning the claimant's credibility." Id. (citation omitted).

8

The ALJ explained that he gave less than substantial consideration to Dr. Michael's 2009 opinion because it was not based on objective evidence but on Plaintiff's account of her symptoms. The ALJ determined that Plaintiff's credibility was eroded by her testimony that she was "fine when performing lower level clerical jobs," her "less than forthcoming" demeanor concerning the fact that she was fired from her program associate position, and Dr. Eaton's test results for intellectual functioning demonstrating "moderately severe to severe dissimulation." (Doc. 9-2, pp. 47-48). In addition, Dr. Cleveland's report demonstrated that Plaintiff had full range of motion of the shoulders, elbows, forearms, wrists, and hands and is capable of fine manipulation. Thus, the ALJ articulated the reasons for discrediting Plaintiff's statements. The ALJ also determined that the opinions of Dr. Eaton and Dr. Cleveland were more consistent with the record as a whole. Thus, Dr. Michael's opinion was not consistent with that of Dr. Eaton's, Dr. Cleveland's, or the record as a whole. As his opinion was not bolstered by the evidence of record and such supported a contrary conclusion, good cause existed to give Dr. Michael's opinion less than substantial consideration. In addition, the opinion was conclusory. This determination by the ALJ is supported by substantial evidence.

Contrary to Plaintiff's assertion, the ALJ clearly cited to Dr. Michael's opinion issued in February 2011, labeled as Exhibit 42F. (Doc. 9-2, p. 48; Doc. 14, pp. 87-88). The ALJ explains that, "Dr. Michaels tried but failed to refute Dr. Eaton's dissimulation and malingering diagnoses" as George Pye, Ph.D. ("Dr. Pye"), was hired to challenge Dr. Eaton's malingering diagnosis and could not rule it out because even his objective testing showed that Plaintiff was over-endorsing her symptoms. (Doc. 9-2, p. 48). Good cause existed because Dr. Michael's 2011 opinion was not bolstered by the evidence

9

and such evidence supported a contrary finding. The ALJ cited to substantial evidence supporting his conclusion that Dr. Michael's opinion was contrary to and failed to refute the other medical evidence and his decision to give it less than substantial consideration. Thus, such decision is supported by substantial evidence.

In both the 2009 and 2011 opinions, Dr. Michaels concludes that Plaintiff's depression "compromises her ability to do most anything in the work arena" and her "significant degree of suffering [ ] continues to preclude her [from] being able to function in any job capacity." (Doc. 12, p. 50; Doc. 14, p. 88). These statements are not medical opinions entitled to substantial weight, as such determination is reserved to the Commissioner. Even if these were considered medical opinions, they are conclusory, which establishes good cause to discount these statements. A statement by a medical source that a Plaintiff is "disabled" or "unable to work" does not mean that the Plaintiff will be determined to be disabled. 20 CFR § 404.1527(d)(1) (2012). Such opinions "are not medical opinions, [ ] but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 CFR § 404.1527(d) (2012).

In addition, Plaintiff testified that she drives her children to and from school and shops for groceries. Thus, Plaintiff's own testimony contradicts and fails to bolster the opinion that she is precluded from working in any job capacity. An "ALJ may reject any medical opinion if the evidence supports a contrary finding." Ward v. Astrue, 286 F. App'x 647, 648 (11th Cir. 2008) (citation omitted). "An ALJ need not give a treating

10

physician's opinion considerable weight if the claimant's own testimony regarding her daily activities contradicts that opinion." Id.

Good cause existed to discount Dr. Michael's 2009 and 2011 opinions. The decision to give less than substantial weight to these opinions is supported by substantial evidence.

II. **Plaintiff's assertion that the ALJ improperly relied upon a consultative's opinion of her IQ testing despite the fact that she alleges disability due to depression and anxiety.**

Plaintiff asserts that the ALJ did not properly consider the most probative medical evidence, but relied "on a consultative's opinion of her IQ testing despite the fact that Ms. Miller alleged disability due to her depression and anxiety." (Doc. 21, p. 9). In determining whether a claimant's physical and mental impairments are severe, the ALJ must consider the combined effect of all the claimant's impairments, "without regard to whether any such impairment, if considered separately, would be of such severity;" and if the ALJ finds a severe combination of impairments, the ALJ must consider the combined impact of the impairments "throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B). "At step two the ALJ must determine if the claimant has any severe impairment. This step acts as a filter. [T]he finding of any severe impairment, whether . . . it qualifies as a disability and whether . . . it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987). "At step three the ALJ must determine if the applicant has a severe impairment or a combination of impairments, whether severe or not, that qualify as a disability. The ALJ must consider the applicant's medical condition taken as a whole." Id. "[T]he ALJ

11

should consider each impairment singularly and in combination to determine disability." Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986).

Here, the ALJ, in determining whether Plaintiff's limited intellectual functioning is a medically determinable impairment, considered the tests performed by Dr. Eaton and Dr. Pye. The ALJ is required to consider Plaintiff's entire medical condition taken as a whole, including any mental impairment that may exist. This would require the ALJ to consider Plaintiff's intellectual functioning tests. The ALJ did not err in considering Plaintiff's IQ testing.[1]

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

**SO REPORTED** and **RECOMMENDED**, this 1st day of May, 2014.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

---

[1] In her enumerations of error, Plaintiff asserts that the ALJ erred in failing to consider the opinions of Brenda Hollis, Dr. Blasko, and Dr. Cabeca. However, because Plaintiff fails to address this assertion in her argument and citation of authority section, the Court deems such argument to be abandoned.

AO 72A
(Rev. 8/82)